# Third District Court of Appeal
## State of Florida

Opinion filed June 29, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-1147
Lower Tribunal No. 19-0891
_____

**M.D., a juvenile,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Dawn Denaro, Judge.

Carlos J. Martinez, Public Defender, and Susan S. Lerner and John Eddy Morrison, Assistant Public Defenders, for appellant.

Ashley Moody, Attorney General, and Asad Ali and David Llanes, Assistant Attorneys General, for appellee.

Before FERNANDEZ, C.J., and LINDSEY, and LOBREE, JJ.

LINDSEY, J.

Appellant M.D., a juvenile, appeals from a final order withholding adjudication of delinquency for resisting an officer without violence.[1] Because at this point in the COVID-19 pandemic, due process requires a case-specific finding of necessity before a trial court may conduct a remote adjudicatory hearing over objection, we reverse and remand for a new adjudicatory hearing.

## I.    BACKGROUND

While surveilling a Jeep Wrangler that matched the description of a recently carjacked vehicle, officers from the tactical robbery unit saw M.D. and another person enter the vehicle and drive away. M.D. drove the vehicle a short distance and parked on the side of the road. Detective Arteaga testified that he then verified the tag matched that of the stolen vehicle and initiated a felony stop.

Several officers pulled up to the Jeep in their unmarked vehicles with their police lights on. According to Detective Arteaga, "once we attempted the felony stop and I got out of my vehicle it was like right away the driver jumped out and started running." Detective Arteaga further testified that as he was chasing after M.D., he said "stop running[,] police." Officers caught

---

[1] This Court has jurisdiction pursuant to Florida Rule of Appellate Procedure 9.140(b)(1)(B).

M.D. and, after a brief struggle, placed him in handcuffs.  M.D. was ultimately charged with grand theft of a motor vehicle, burglary of an unoccupied conveyance, and two counts of resisting without violence.[2]

M.D.'s adjudicatory hearing was scheduled to be held remotely over Zoom[3] on March 8, 2021.  M.D. filed a written objection, arguing that a remote trial would violate his right to be present and his right to confront witnesses.

At the beginning of the hearing, the trial court ruled as follows:

> There's been cases that have discussed this issue that have come down throughout the State. Zoom is the norm at this time in the juvenile system.
>
> We have administrative orders and we have orders from the Supreme Court as to how trials are to be conducted in a safe way and so the Court has to engage in a balance, safety and the Court believes that his constitutional rights will not be violated in this trial.
>
> He'll have a right to confront, the witnesses are going to be right in front of his face. At any moment in time when you want to caucus with him you raise your hand or let me know and I'm more than happy to put you in a breakout room at any time to speak

---

[2] Though the Jeep was taken during an armed carjacking, M.D. was not charged with this crime because the victim indicated that M.D. was not the person who carjacked him.

[3] "Zoom is a cloud-based communications application for virtual video conferencing." E.A.C. v. State, 324 So. 3d 499, 508 n.9 (Fla. 4th DCA 2021) (Levine, C.J., specially concurring).

with your client, that goes to your client as well if he wants that meaningful dialogue and communication with you he can.

But this is how we have been ordered to do things because of the situation of which we find ourselves in and we have to be safe and the courts have ruled that this is a very safe, effective and efficient way to handle the trial. He'll be able to see everybody that's going to be in front of him.

He'll be able to speak to his lawyers, at any moment in time when you want to talk to him further and in private you let me know and I'm happy to put you in a room to talk further with him alright.

So we will proceed with this Zoom hearing and we will begin with the state attorney and you can begin if you'd like with an opening statement.

Everyone at the adjudicatory hearing appeared remotely, including the State's two witnesses: the owner of the vehicle and Detective Arteaga. During the hearing, there were times when M.D. did not seem to understand he was participating in a remote trial. For example, he interrupted his attorney in the middle of cross-examination because he wanted to say something to the Court:

[COUNSEL FOR M.D.]: Judge if I can interrupt for a second, our client is raising his hand. I don't know if he wants to [talk] to us.

[JUDGE]: Sure. I'll ask him. M.D. is there a question that you have for the Court or would you like to go into a room with your lawyer? Are you objecting to something?

4

M.D.: Nah I want to say something.

[COUNSEL FOR M.D.]: Okay what?

[JUDGE]: This wouldn't be the time to say. Hold on for a moment. Would you like your client . . . to say something or not.

[COUNSEL FOR M.D.]: No not at this time.

M.D.: Nah I want to say something myself.

[COUNSEL FOR M.D.]: Okay M.D. we'll talk in a breakout room and we'll see if that's possible and if it is we'll make it happen okay but right now I'm going to finish this cross-examination okay?

M.D.: Okay.

M.D. again interrupted the proceedings during the State's closing argument:

[JUDGE]: M.D. please put your hands down, it's distracting I'm trying to focus on-just sit still please. Try to sit still, thank you. Thank you very much. Go on.

After the State rested, the court granted M.D.'s motion for judgment of dismissal as to grand theft and burglary, finding that the State failed to sufficiently prove that the vehicle M.D. was driving was the same vehicle that was stolen. At the conclusion of the adjudicatory hearing, the court found M.D. guilty of resisting Detective Arteaga without violence and not guilty of the second count of resisting. M.D. timely appealed.

## II.  ANALYSIS

M.D.'s primary argument on appeal is that forcing him to participate in a remote proceeding over objection and without case-specific findings of necessity violated his right to confrontation and right to be present. We write solely to address this issue. Because we conclude that at this point in the pandemic, due process requires a case-specific finding of necessity before a trial court may conduct a remote adjudicatory hearing over objection, we reverse and remand for a new adjudicatory hearing.

We recognize that juvenile proceedings differ from criminal proceedings. However, certain due process rights, including the right to confrontation, apply in juvenile proceedings. See McKeiver v. Pennsylvania, 403 U.S. 528, 543 (1971) ("[T]he applicable due process standard in juvenile proceedings . . . is fundamental fairness [with] an emphasis on factfinding procedures. The requirements of notice, counsel, confrontation, cross-examination, and standard of proof naturally flow[] from this emphasis."); T.H. v. State, 47 Fla. L. Weekly D681, D682 (Fla. 2d DCA Mar. 18, 2022) ("[P]rocedural safeguards found in criminal proceedings, including the right to confront witnesses, are afforded to a child in a juvenile proceeding through the Due Process Clause of the Fourteenth Amendment.").[4]

---

[4] As further explained in McKeiver, constitutional rights applicable in criminal proceedings such as the rights to appropriate notice, to counsel, to confrontation and to cross-examination, and the privilege against self-

This Court reviews whether a juvenile's due process rights have been violated under the de novo standard. See T.H., 47 Fla. L. Weekly at D681.

The parties agree that the right to confrontation, which includes the right to be physically present, is not absolute. See Maryland v. Craig, 497 U.S. 836, 836-37 (1990); Harrell v. State, 709 So. 2d 1364, 1368 (Fla. 1998). M.D. argues that the trial court was required to make case-specific findings before ordering that the adjudicatory hearing be conducted remotely. See Craig, 497 U.S. at 855 (holding that to justify the absence of face-to-face confrontation of a witness, the trial court must make a case-specific finding of necessity). The State argues that no case-specific findings were necessary because the trial court complied with a Florida Supreme Court administrative order that contained general findings of necessity for remote proceedings based on the existing public health emergency.[5]

_____

incrimination "*have equal application* to that part of the state juvenile proceeding that is adjudicative in nature." 403 U.S. at 533 (emphasis added).

[5] The State relies on Order No. AOSC20-23, (Amendment 9) (Fla. Feb. 17, 2021), which states that "[n]on-jury trials in . . . juvenile delinquency cases shall be conducted remotely if ordered by the chief judge or the presiding judge or, if not, shall be conducted in person." Importantly, the Order states in its Guiding Principles that "[t]he presiding judge in all cases must consider the constitutional rights of crime victims and criminal defendants and the public's constitutional right of access to the courts." While the Administrative Order authorizes remote adjudicatory hearings, it does not do so to the exclusion of any objections that may be raised and considered.

7

This is a developing area of the law. We therefore consider recent Florida cases that have addressed the right to confrontation in conjunction with the public policy concerns surrounding the COVID-19 pandemic. See Craig, 497 U.S. at 837 ("[T]he right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the testimony's reliability is otherwise assured.").

This Court has already considered whether an adult remote violation of probation proceeding violated a defendant's due process and confrontation rights. See Clarington v. State, 314 So. 3d 495, 497 (Fla. 3d DCA 2020), review denied, SC20-1797, 2021 WL 1561346 (Fla. Apr. 21, 2021). After explaining the flexible nature of due process rights and the differences between a probation violation hearing and a criminal prosecution, this Court concluded that "the proceeding proposed by the trial court in this case appropriately considered these necessities and competing interests, balancing the defendant's constitutional rights and the responsibility of the judicial system to hear, adjudicate and dispose of criminal matters and conduct criminal proceedings, through the application of temporary procedures needed to ensure the health and safety of those participating." Id. at 509.

Clarington was a narrow decision "limited to the nature of the proceeding at issue (a violation of probation proceeding), and the question whether such proceeding, if conducted remotely by audio-video technology, violates petitioner's due process and confrontation rights, weighed and analyzed in light of the Coronavirus pandemic and the Florida Supreme Court's current administrative orders regulating the conduct of criminal proceedings in the midst of that public health emergency." Id.

In E.A.C. v. State, 324 So. 3d 499 (Fla. 4th DCA 2021), the Fourth District considered whether a juvenile's confrontation rights were violated when witnesses appeared via Zoom. Unlike here, the juvenile in E.A.C. was present in the courtroom with the attorneys and judge. Our sister district agreed that the juvenile had a due process right to counsel, to confront and cross-examine witnesses, and to be physically present at his trial. Id. at 504. However, the court, relying on the analysis in Clarington, disagreed that the appearance of witnesses via Zoom violated the juvenile's due process confrontation rights "under the pandemic circumstances that existed in August 2020." Id. at 507.

Judge Levine specially concurred to explain the "limited circumstances where the specific necessity of waiving 'face-to-face' confrontation of witnesses by the defendant is satisfied by the procedure used in this case

9

during this trial held on August 14, 2020." Id. (Levine, C.J., specially concurring). The special concurrence acknowledges that the preferred procedure is for the trial court to make case-specific findings before allowing for the questioning of witnesses via Zoom as required by Craig. Id. Further, the special concurrence concludes that a case-specific finding was not required in August 2020 because there was a clear necessity, and all witnesses were in the same situation.[6] Id.

More recently, in a juvenile case procedurally similar to the one now before us, the Second District considered whether an adjudicatory hearing conducted in October 2020, where all parties appeared via Zoom, violated the juvenile's due process confrontation rights. See T.H., 47 Fla. L. Weekly D681. As in the instant case, the juvenile in T.H. filed a written objection arguing that a remote hearing would violate his constitutional rights. The trial court overruled the objection and determined that the COVID-19 pandemic and various administrative orders permitted it to deny the juvenile's right to confront witnesses in person. Id. The Second District held that "the trial court erred in ruling that the adjudicatory hearing would proceed via Zoom

---

[6] Judge Ciklin dissented on the basis that the juvenile's fundamental constitutional right to confrontation was violated because the trial court failed to make the case-specific findings required by Craig. Id. at 509 (Ciklin, J., dissenting).

10

without allowing [the juvenile] a hearing on his objection and without making a case-specific finding of necessity to limit confrontation rights." Id. at D683.[7] Accordingly, the court reversed and remanded for a new adjudicatory hearing.[8]

It is apparent from the cases outlined above (and the various special concurrences and dissents), that there is some disagreement as to when remote proceedings conducted during the COVID-19 pandemic violate a juvenile's due process rights to confrontation. Early in the pandemic, courts were more likely to weigh the public policy concerns surrounding public health and the pandemic in favor of allowing remote proceedings. Moreover, as recognized by Judge Levine's special concurrence in E.A.C., in the early stages of the pandemic, "[i]t seems futile to require a 'case-specific finding' in one courtroom that would mirror the situation throughout the state, and

---

[7] See also A.S. v. State, 47 Fla. L. Weekly D946 (Fla. 2d DCA Apr. 27, 2022) (reversing and remanding for a new adjudicatory hearing); M.M. v. State, 47 Fla. L. Weekly D798 (Fla. 2d DCA Apr. 6, 2022) (same).

[8] Judge Atkinson dissented: "because juvenile delinquency adjudicatory hearings are not subject to the constitutionally enumerated confrontation right applicable only in criminal proceedings, the trial court here was permitted to make a categorical finding that necessity demanded that juveniles only be permitted to confront witnesses against them remotely through two-way audiovisual technology." T.H., 47 Fla. L. Weekly at D683 (Atkinson, J., dissenting).

potentially the country." 324 So. 3d at 508 (Levine, C.J., specially concurring). However, the longer the pandemic lasts, the more demanding courts have become.[9]

Consequently, we follow the more recent cases from the Second District, which require case-specific findings before the trial court may conduct a remote adjudicatory hearing over objection. Because we are now in the later stages of the pandemic, we reverse and remand for a new adjudicatory hearing. On remand, the adjudicatory hearing may be held via Zoom if the trial court holds a hearing on M.D.'s objection and makes a case-specific finding of necessity before limiting his confrontation rights.[10]

---

[9] Cf. E.A.C., 324 So. 3d at 508 (Levine, C.J., specially concurring):

> There should be a clear correlation between the existence and severity of the exigency and the latitude given to the trial court. The longer the exigency lasts, however, the more demanding we should be in allowing that accommodation to continue. The reason for this is clear. As Justice Felix Frankfurter noted many years ago, "The history of liberty has largely been the history of observance of procedural safeguards." McNabb v. United States, 318 U.S. 332, 347, 63 S.Ct. 608, 87 L.Ed. 819 (1943). As the exigency recedes, so should any allowance of any emergency accommodation.

[10] Holding a hearing on objections to remote appearances is otherwise addressed in in the Florida Rules of Juvenile Procedure and is applicable even in the absence of a public health emergency such as a pandemic. See

12

### III.    CONCLUSION

Because we conclude that at this point in the pandemic, due process requires a case-specific finding of necessity before a trial court may conduct a remote adjudicatory hearing over objection, we reverse and remand for a new adjudicatory hearing.

Reversed and remanded.

---

Fla. R. Juv. P. 8.104 (requiring a hearing and specific findings of fact on the record before permitting testimony by closed-circuit television).